**UNITED STATES of America,**
**Appellant–Cross–Appellee,**

v.

**Ramon REYES, Defendant–Appellee–**
**Cross–Appellant.**

**No. 03–1119.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 3, 2003.

Decided: Dec. 19, 2003.

Alexander H. Southwell, Assistant United States Attorney (Andrew J. Ceresney, Gary Stein, Assistant United States Attorneys, on the brief), for James B. Comey, United States Attorney for the Southern District of New York, New York, NY, for Appellant.

Joseph A. Grob, Of Counsel, Moskowitz & Book, LLP, New York, NY, for Defendant–Appellee.

Before: McLAUGHLIN, KATZMANN, Circuit Judges, and SCHEINDLIN, District Court Judge.*

MCLAUGHLIN, Circuit Judge.

A confidential informant ("CI") advised the New York City Police Department ("NYPD") that defendant Ramon Reyes regularly sold narcotics and carried a firearm. Cooperating with the NYPD, the CI arranged to purchase heroin from Reyes in a "buy-and-bust" operation.

As previously agreed, Reyes met the CI and an undercover officer, posing as the "money guy," at a bodega in the Bronx. The CI saw that Reyes was carrying narcotics; but he could not tell whether Reyes was armed. Officers were then directed to arrest Reyes.

Before handcuffing Reyes or conducting a pat-down search, the arresting officer asked him whether he had anything on his person that could harm the officer. Reyes responded that he had a gun in his jacket. The officer retrieved the gun and again asked whether he had anything else on him that could hurt the officer. Reyes responded that there were drugs in his car.

Reyes sought to have both statements suppressed, arguing that he had not been given *Miranda* warnings prior to the questioning. The Government argued against suppression, claiming that the public safety exception to the *Miranda* rule, set forth in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), was applicable.

The United States District Court for the Southern District of New York (Lynch, *J.*) granted Reyes' motion, finding the public safety exception inapplicable. The Gov-

ernment now appeals pursuant to 18 U.S.C. § 3731.

We conclude that the arresting officer asked Reyes "questions necessary to secure [his] own safety" and was not trying to elicit incriminating evidence. *Quarles,* 467 U.S. at 659, 104 S.Ct. 2626. As such, the public safety exception applies. Accordingly, we REVERSE the district court's grant of Reyes' motion to suppress.

## BACKGROUND

Ramon Reyes was arrested and charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), distributing heroin, in violation of 21 U.S.C. §§ 812, 841(b)(1)(C), and carrying or using a firearm in relation to a narcotics offense, in violation of 18 U.S.C. § 924(c).

Reyes' arrest was based, in part, on the cooperation of a CI. The CI told the NYPD that Reyes regularly sold narcotics and—significantly—that he carried a firearm. In consultation with the NYPD, the CI arranged to buy 200 glassine envelopes of heroin from Reyes.

Reyes agreed to meet the CI and an undercover officer, who posed as the "money guy," at a bodega in the Bronx (across the street from a school). Upon Reyes' arrival at the store, the CI got into Reyes' car and saw that Reyes was carrying narcotics; but he could not tell whether Reyes was armed. Officers were then directed to "move in" and arrest Reyes.

Before handcuffing Reyes or reading the *Miranda* warnings, the arresting officer asked Reyes "if he had anything on him that [could] hurt [the officer] or anyone on [the] field team." Reyes responded that he had a gun in his pocket. The officer removed the loaded revolver from Reyes'

* The Honorable Shira A. Scheindlin, of the United States District Court for the Southern District of New York, sitting by designation.

pocket and handcuffed him. Before conducting a pat-down and search, the officer again asked whether Reyes "had anything inside [his] pocket that could hurt" the officer. This time, Reyes responded that he had drugs in his car. Almost 200 glassine envelopes containing heroin were recovered from Reyes' car.

Before trial, Reyes moved to suppress: (1) the firearm removed from his pocket and the heroin seized from his car; (2) the statements made during his arrest regarding the gun and the narcotics; and (3) a statement made at the station house that the jacket in which the gun was found belonged to the undercover officer.

At a suppression hearing, three NYPD detectives testified that they knew Reyes was a narcotics trafficker who planned to engage in a substantial heroin transaction with the CI. One officer stated that he had been informed that Reyes usually carried a gun on his person and a shotgun in his car. The other officers were aware that Reyes usually carried a gun.

The district court orally denied Reyes' motion to suppress the physical evidence and the station house statement. In a written opinion, the court granted Reyes' motion to suppress the statements made during his arrest, concluding that they violated *Miranda* and that the public safety exception set forth in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), did not apply. *See United States v. Reyes,* 249 F.Supp.2d 277 (S.D.N.Y.2003).

In so ruling, the district court acknowledged that the Government had "plausibly" argued that the arresting officer's questions were "necessary to secure [his] own safety." *Id.* at 280 (internal quotation marks omitted). The court stated, however, that a "generalized fear of sharp objects" would not "render admissible statements made in response to a question as

broad as whether 'he had anything on him that can hurt me or anyone on my field team.'" *Id.* at 282. Additionally, the court found that Reyes was "not merely 'in custody,'" but rather was "physically overpowered, forcibly bent over a car, and [was] urgently (and repeatedly) asked what harmful objects he ha[d] on him." *Id.* at 283. Noting that Reyes had a limited command of the English language, the court concluded that he "quite naturally did not interpret the question as limited to sharp objects." *Id.*

The Government now appeals solely the suppression of Reyes' statements during his arrest regarding the gun and the narcotics.

## DISCUSSION

 In reviewing a district court's ruling on a suppression motion, we review factual findings for clear error and questions of law *de novo. United States v. Yousef,* 327 F.3d 56, 124 (2d Cir.2003). The reasonableness of police action is a "mixed question of law and fact" that is reviewed *de novo. See Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (holding that determinations of reasonable suspicion and probable cause are mixed questions of law and fact that should be reviewed *de novo* ); *United States v. Reilly,* 224 F.3d 986, 991 (9th Cir.2000) ("The determination of exigent circumstances is a mixed question of law and fact that we review de novo.").

In this case, the Government does not challenge any of the district court's factual findings, nor does it dispute that the officer's questioning constituted interrogation within the meaning of *Miranda.* The Government's sole contention is that the statements should have been admitted under the "public safety exception" to the *Miranda* rule.

A. *The Law*

■ Under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), statements made by a suspect in custody in response to police interrogation are inadmissible, unless certain now famous warnings preceded the statements. *Id.* at 454, 86 S.Ct. 1602. In *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), the Supreme Court reaffirmed this ruling and made clear that the *Miranda* rule is of constitutional magnitude. *Id.* at 432. In *Quarles,* however, the Supreme Court earlier announced a "public safety" exception to the *per se* rule barring admission of statements made without *Miranda* warnings. 467 U.S. at 655–59, 104 S.Ct. 2626. The question is whether that exception applies here.

1. *"Public Safety" Exception*

In *Quarles,* a woman informed the police that she had been raped at gunpoint. *Id.* at 651–52, 104 S.Ct. 2626. She provided a description of her attacker. *Id.* The police entered a nearby supermarket and spotted a man fitting her description. *Id.* at 652, 104 S.Ct. 2626. After a brief pursuit, the officers caught the suspect and discovered that he was wearing an empty shoulder holster. *Id.* Before advising him of his *Miranda* rights, the officers asked the suspect where his gun was. *Id.* The suspect "nodded in the direction of some empty cartons and responded, 'the gun is over there.'" *Id.*

Reversing the state court's suppression of both the statement and the firearm, the Supreme Court held that *Miranda* warnings need not precede "questions reasonably prompted by a concern for the public safety" or for the safety of the arresting officers. *Id.* at 656, 658–59, 104 S.Ct. 2626.

Although the Court cautioned that the "public safety" exception was narrow, *id.*

at 658, 104 S.Ct. 2626, it emphasized that the purpose of the exception was to allow officers "to follow their legitimate instincts when confronting situations presenting a danger to the public safety," *id.* at 659, 104 S.Ct. 2626, because "spontaneity ... is necessarily the order of the day," *id.* at 656, 104 S.Ct. 2626. The Court realistically observed that "officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 658–59, 104 S.Ct. 2626.

■ The public safety exception permits questions "reasonably prompted by a concern" for safety and in each case "will be circumscribed by the exigency which justifies it." *Id.* at 656, 658, 104 S.Ct. 2626. Like the reasonableness standard itself, the public safety exception is "a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of the circumstances in a given case." *United States v. Banks,* — U.S. —, —, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003).

2. *The Quarles Exception in the Circuits*

We have had few opportunities to address the public safety exception. *See, e.g., United States v. Khalil,* 214 F.3d 111, 121–22 (2d Cir.2000) (affirming admission of defendant's responses to police questioning about a bomb that could have exploded before being disarmed).

Several other circuits, however, have applied the exception to facts similar to those presented here. *See, e.g., United States v. Williams,* 181 F.3d 945, 953–54 (8th Cir. 1999) (admitting statements of a narcotics defendant arrested in his apartment who was asked by police "is there anything we

need to be aware of?"); *United States v. Shea,* 150 F.3d 44, 47–48 (1st Cir.1998) (upholding questioning of a bank robbery suspect about whether he had weapons or needles after being arrested and in anticipation of search incident to arrest); *United States v. Carrillo,* 16 F.3d 1046, 1049–50 (9th Cir.1994) (questioning whether narcotics defendant had needles on his person, asked as a matter of routine rather than as a result of specific information regarding the defendant, stemmed from objectively reasonable concern for officer safety); *Fleming v. Collins,* 954 F.2d 1109, 1111, 1114 (5th Cir.1992) (*en banc*) (upholding questioning of suspected bank robber regarding whether he had any weapons); *United States v. Edwards,* 885 F.2d 377, 384 & n. 4 (7th Cir.1989) (upholding questioning of a suspected drug dealer as to whether he was armed because "drug dealers are known to arm themselves," and the officers had an "objectively reasonable need" to protect themselves "from the immediate danger that a weapon would pose," even though defendants had already been handcuffed and frisked); *United States v. Brady,* 819 F.2d 884, 887–88 (9th Cir.1987) (applying public safety exception to officer's inquiry regarding the presence of a gun in a suspect's car even though there was "no . . . indication that [the suspect] possessed a weapon" or "had placed an unguarded weapon in a public place" where a "crowd was gathering" in a "rough neighborhood").

In *United States v. Lackey,* 334 F.3d 1224 (10th Cir.2003), the Tenth Circuit relied on the public safety exception to affirm the denial of a suppression motion. In response to a witness's report that the defendant had fired shots at her home, police approached the defendant in the parking lot of his apartment building. *Id.* at 1225. The officer informed him that he was under arrest and asked: "Do you have anything on you that would hurt me?" and

"Do you have any guns or sharp objects on you?" *Id.* The defendant responded: "No, I don't have anything on me, but there [is] a gun in the car." *Id.* at 1225–26.

The Tenth Circuit found that the officers' "focused" questions "addressed a real and substantial risk to the safety of the officers" and were *not* designed "to acquire incriminating evidence[, but] solely to protect the officers, as well as the arrestee, from physical injury." *Id.* at 1227–28. The court also observed that such questions would not typically be the sole source of the incriminating evidence because a search incident to an arrest would inevitably discover the evidence. *Id.* at 1228. Thus, "[t]he risk of incrimination is limited to non-responsive answers (such as in this case, when the suspect provides more information than requested) . . . ." *Id.*

The cases relied on by the district court in excluding Reyes' statements are distinguishable. *Reyes,* 249 F.Supp.2d at 281–82, 281 n. 4 (citing *United States v. Jones,* 154 F.Supp.2d 617, 627 (S.D.N.Y.2001) (Lynch, *J.*) (surveying case law applying *Quarles*)). In each, the suspect and the surrounding area had been secured and any threat to the officer or to public safety eliminated prior to the unwarned questioning. *See United States v. Mobley,* 40 F.3d 688, 690–94 (4th Cir.1994) (question whether "there was anything in the apartment that could be of danger to the agents" was improper because the apartment had already been secured, the defendant lived alone and had answered the door naked and unarmed); *United States v. Raborn,* 872 F.2d 589, 595 (5th Cir.1989) (*Quarles* did not justify unwarned interrogation of a narcotics suspect about the location of a weapon in his vehicle, where police had already secured the vehicle).

### B. *The Merits*

■ Here, Reyes was a known narcotics dealer. He was arrested in a public place

during a heroin transaction. The officers had specific information that he routinely carried a firearm while conducting business. The arrest took place at approximately 4:30 in the afternoon on a clear fall weekday in front of a bodega and across the street from a school. This is a graphic tableau of danger to both the officers and the public.

As in *Lackey*, the arresting officer here had an objectively reasonable belief that Reyes, who was a professional seller of heroin, had sharp objects or a firearm on his person. Indeed, we have often recognized that firearms and sharp objects, such as razor blades and hypodermic needles, are "tools of the [drug] trade" regularly found on narcotics traffickers. *See United States v. Wiener*, 534 F.2d 15, 18 (2d Cir. 1976) (firearms, like "scales, glassine bags, cutting equipment and other narcotics equipment" are commonly kept on the premises of narcotics dealers); *see also United States v. Pigrum*, 922 F.2d 249, 254 (5th Cir.1991) (recognizing that drug paraphernalia such as razors, mirrors, and knives are commonly used by dealers to cut drugs for distribution and are "tools of the trade"). The arresting officer drew on his knowledge and experience as a member of the NYPD in concluding that Reyes could be carrying sharp objects or firearms.

Additionally, each officer testified that, based on information provided by the CI, he was aware that Reyes typically carried a gun. Although Reyes had been apprehended, he was not yet handcuffed and still could have reached for a concealed weapon. In addition, there was a risk that Reyes was carrying a loaded gun that could accidentally be discharged during a search. The officers had a solid basis for the belief that Reyes was armed and that the concealed weapon posed a danger to the police and to the public. *See Quarles*,

467 U.S. at 657, 104 S.Ct. 2626 (officers were "confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had *every reason to believe* the suspect had just removed from his empty holster") (emphasis added); *see also Reilly*, 224 F.3d at 993 (upholding questioning of subdued suspect who was surrounded by officers with loaded weapons, because he was not yet handcuffed and still had the capacity to grab nearby objects); *Jones*, 154 F.Supp.2d at 629 (finding that the officers had a specific reason to believe a gun was present based upon conversations with a CI (months before the raid) which revealed that defendant had been selling firearms in the vicinity several months earlier).

We are likewise persuaded that the arresting officer's questions were sufficiently limited in scope and were not posed to elicit incriminating evidence. *See Quarles*, 467 U.S. at 658–59, 104 S.Ct. 2626. Police cannot be faulted for the unforeseeable results of their words or actions. *See Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *see also Lackey*, 334 F.3d at 1227–28 (noting that where questions address a "real and substantial risk to the safety of the officers[,]" "[t]he risk of incrimination is limited to non-responsive answers"). The questions that the officer asked Reyes concerned the presence of dangerous objects on Reyes' person. Had Reyes answered these questions responsively, there would have been little risk of incrimination because the officers would have inevitably uncovered any firearms or drug paraphernalia during a search incident to his arrest.

It is not without significance that, after Reyes gave the incriminating response about having drugs in his car, the officer asked no further questions. The arresting officer's disinclination to exploit the situation suggests that his question was a rea-

sonable attempt to "insure his personal safety in the midst of a search." *Carrillo,* 16 F.3d at 1050.

 Concededly there is an inherent risk that the public safety exception might be distorted into "a *per se* rule as to questioning people in custody on narcotics charges." *Reyes,* 249 F.Supp.2d at 282 (citing *Jones,* 154 F.Supp.2d at 629). We emphasize that it cannot become a matter of course to precede every *Miranda* warning with the questions that were put to Reyes. We remain vigilant that "a right enshrined in the words of the Constitution is not lost in the reality of the street." *United States v. Anderson,* 929 F.2d 96, 99 (2d Cir.1991). We emphasize, as did the Supreme Court, that the purpose of the public safety exception is to allow officers "to follow their legitimate instincts when confronting situations presenting a danger to the public safety." *Quarles,* 467 U.S. at 659, 104 S.Ct. 2626. There has to be some flexibility in situations where the safety of the public and the officers are at risk. *See id.* at 656, 104 S.Ct. 2626 ("[W]e do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety."); *see also Williams,* 181 F.3d at 953 n. 13 (noting that "conditioning admissibility of evidence under the public safety exception on an officer's ability to ask questions in a specific form would run counter to" *Quarles* ).

The arresting officer's questions to Reyes were clearly limited to objects located *on his person.* The testimony revealed that the arresting officer was "reasonably prompted by a concern for" officer safety and that the questioning was not "designed solely to elicit testimonial evidence." Therefore, we hold that the *Quarles* public

safety exception applies to the facts presented here.

## CONCLUSION

For the reasons stated herein, we REVERSE the district court's grant of Reyes' motion to suppress.