*United States v. Rodriguez*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 19th day of March, two thousand eighteen.

Present:     ROBERT A. KATZMANN,
                        *Chief Judge*,
              DENNY CHIN,
                        *Circuit Judge*,
              ALISON J. NATHAN,
                        *District Judge*.[*]

UNITED STATES OF AMERICA,

                        *Appellee*,

                        v.                                          No. 17-392

DERRICK RODRIGUEZ,

                        *Defendant-Appellant.*

For Appellee:                         JASON RICHMAN (Margaret Garnett, *on the brief*),
                                      Assistant United States Attorneys, *for* Geoffrey S.
                                      Berman, United States Attorney for the Southern
                                      District of New York, New York, NY.

---

[*] Judge Alison J. Nathan, United States District Court for the Southern District of New York, sitting by designation.

For Defendant-Appellant:        JEFFREY PITTELL, Maher & Pittell, LLP, Great Neck, NY.

Appeal from the United States District Court for the Southern District of New York (Hellerstein, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Derrick Rodriguez appeals from a judgment entered January 26, 2017 by the United States District Court for the Southern District of New York (Hellerstein, *J.*). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Rodriguez' sole argument on appeal is that the district court erred by denying his motion to suppress evidence uncovered during an allegedly unlawful stop-and-frisk and his post-arrest statements made to law enforcement. The relevant facts begin one year prior to the stop-and-frisk at issue. On July 4, 2014, officers Matthew Gale and John Kontouris of the New York Police Department ("NYPD") received a radio call reporting a man with a gun. Officer Gale apprehended the individual, arrested him, and retrieved the firearm. The individual, Rodriguez, subsequently pleaded guilty to attempted criminal possession of a weapon in violation of New York law. Because of his felony conviction, Rodriguez was barred from subsequently possessing a firearm pursuant to Title 18, United States Code, Section 922(g)(1).

Approximately one year later, at around 3:30am on August 22, 2015, officers Gale and Kontouris responded to a radio call of a loud group fighting in the vicinity of 870 Hunts Point Avenue in the Hunts Point neighborhood of the Bronx. Upon arriving on the scene, the officers recognized some of the individuals as members of the Hunts Point Family gang ("HPF")— including Rodriguez. The officers knew Rodriguez was a member of the HPF based on their

2

review of precinct "set books" and their arrest of him the previous year. App. 18-21. HPF is a criminal gang involved in drug sales and violent crimes in the Hunts Point area.

The officers did not observe Rodriguez shouting, acting disorderly, or committing any type of unlawful activity at the time. Shortly thereafter, however, a marked police van arrived, and Rodriguez began to walk away from the area with approximately four other individuals. It was then that the officers observed Rodriguez moving in a suspicious manner, with his arm continuously "pinned to his left side, not swinging freely with the rest of his body and [he] appeared to be . . . holding something against his midsection with his left hand." *Id.* at 22-23. Based on their training and experience, the officers suspected that Rodriguez possessed a firearm. The officers subsequently approached him on foot.

Rodriguez appeared to recognize the officers, became visibly nervous, lowered his shoulders, and moved his right hand so that both of his hands were against his midsection, as if to protect his waistband area. The officers grabbed Rodriguez as he attempted to walk between them, and officer Gale patted Rodriguez down in the area around his waistband. Officer Gale found a loaded Walther P22 semiautomatic handgun, and Rodriguez was placed under arrest. Rodriguez was read his *Miranda* rights, orally waived them, and then stated, in sum and substance, that he had possessed the recovered firearm for approximately two months, that he had it for his own protection, and that he was a member of HPF, the gang that the officers previously understood him to be affiliated with. Presentence Report ("PSR") ¶ 20.

Rodriguez subsequently filed a motion to suppress the evidence seized upon his arrest and his post-arrest statements because the officers allegedly lacked reasonable suspicion to justify the investigatory stop. The district court held an evidentiary hearing during which officers Gale and Kontouris testified, and at the request of the court, both officers pantomimed the

3

manner in which Rodriguez walked, and how he covered his waistband with both hands upon recognizing the officers. Officer Gale further testified that while the object held by Rodriguez "could have been a lot of things," he usually did not "see people carrying smartphones or wallets in that position or with that movement of the body." App. 42. Instead, this was a "good indicator of a potentially armed suspect" based on officer Gale's experience and training. *Id.* at 23.

The district court denied Rodriguez' motion from the bench and issued an order on June 6, 2016 confirming its bench ruling. The order identified four factors supporting its finding that the officers had reasonable suspicion based on the "totality of the circumstances" that Rodriguez was engaged in unlawful activity:

(1)     The officers were responding to a radio call about a "possible fight or argument" at 3:30 AM in a "high crime area";

(2)     The officers observed Rodriguez "walking away when a police van arrived";

(3)     The manner in which Rodriguez walked indicated that he was "holding an object"; and

(4)     Rodriguez tried to pass between the officers, "this time holding the object in and below his waistband with both hands."

*Id.* at 10-11. Rodriguez subsequently pled guilty to possessing a firearm after having been previously convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1). As part of his plea agreement, Rodriguez preserved his right to appeal the district court's order denying his motion to suppress. The district court sentenced Rodriguez to 20 months' imprisonment, Rodriguez timely appealed, and he now argues that the district court erred by denying his Fourth Amendment challenge.

Pursuant to the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968), police may stop someone if they have "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989). We "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and

4

objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). The question of whether the police had reasonable suspicion to conduct a search is "mixed question of law and fact" that is reviewed *de novo*. *United States v. Reyes*, 353 F.3d 148, 151 (2d Cir. 2003). We review a district court's factual findings related to a motion to suppress for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). Although there is disagreement over whether, when a suppression motion is denied, facts are to be construed in the government's favor, *compare United States v. Schaffer*, 851 F.3d 166, 169 (2d Cir. 2017) (explaining that in reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the government"), *with United States v. Bershchansky*, 788 F.3d 102, 109 (2d Cir. 2015) ("[w]e think the better approach is to review the district court's findings of fact for clear error without viewing the evidence in favor of either party"), we need not resolve this disagreement here because Rodriguez' challenge fails under either view of the evidence.

Rodriguez' body movement, coupled with the extensive testimony at the suppression hearing by officers Gale and Kontouris about why such movement indicated that Rodriguez had a gun, established reasonable suspicion for the stop-and-frisk.[1] In *United States v. Padilla*, the Court found reasonable suspicion to conduct a stop-and-frisk where the arresting officer observed, among other things, the defendant "reach underneath his jacket and shirt and adjust a weighty object concealed at the center of his waistline." 548 F.3d 179, 189 (2d Cir. 2008). As in the present case, the district court watched in-court demonstrations of the gesture, and "concluded that it was a distinctive gripping motion, as if holding and adjusting . . . something

---

[1] Because this testimony was sufficient to justify the investigatory stop, we do not reach the issue of whether Hunts Point is a "high crime area" or whether it was probative that Rodriguez walked away from the police van. We also do not reach the issue of whether Rodriguez' affiliation with HPF is a factor supporting reasonable suspicion (a ground not relied on by the district court).

comparable in size, shape, and heft to a handgun." *Id.* (internal quotation marks omitted). The arresting officer also testified that he recognized the defendant's "gesture as consistent with the adjustment of a concealed firearm" based on his "eight to ten arrests of armed individuals observed to make the same movement," and that "the adjustment was not consistent with any of the innocent explanations proposed by defense counsel," such as a cell phone, key ring, or belt buckle. *Id.* On this basis, the *Padilla* Court concluded that "[e]ven if the gesture were consistent with conceivable innocuous adjustments, its distinctive consistency with the adjustment of a firearm provided the detective with a reasonable basis to suspect that [the defendant] was armed." *Id.* (internal quotation marks omitted).

These same considerations apply to the present appeal. The district court requested officers Gale and Kontouris to demonstrate how Rodriguez walked away from the scene of the early-morning gathering, and noted that there was nothing inherently suspicious about a person who "swing[s] one arm and keep[s] another stationary." App. 80. The court nonetheless concluded that Rodriguez' movement became suspicious when it continued for a long period of time, because it established an "articulable suspicion of having a weapon in the waistband area of the trousers and the body." *Id.* at 81. The district court further requested officer Kontouris to demonstrate how Rodriguez covered his waistband upon recognizing the officers, and credited Kontouris' testimony that this behavior was suspicious and indicated that Rodriguez had a firearm. Although defense counsel proposed several innocent explanations of Rodriguez' movements, officer Gale testified that he usually did not "see people carrying smartphones or wallets in that position or with that movement of the body," *id.* at 42, and we find no clear error in the district court's crediting that testimony.

These findings were sufficient to establish reasonable suspicion to justify the stop of

Rodriguez. Officer Gale testified that he was aware that Rodriguez pleaded guilty to attempted criminal possession of a weapon in 2014, and therefore was aware that Rodriguez was barred under federal law from possessing a firearm. Accordingly, once officers Gale and Kontouris had reasonable suspicion that Rodriguez had a gun, they also had reasonable suspicion that he was engaged in a crime—*i.e.*, possessing a firearm in violation of Title 18, United States Code, Section 922(g)(1). Their stop-and-frisk was accordingly lawful under the Fourth Amendment.

We have considered all of Rodriguez' arguments on this appeal and find in them no basis for reversal. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK