**James C. WIGGINS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 84–1723.**

District of Columbia Court of Appeals.

Submitted Dec. 11, 1986.
Decided March 4, 1987.

Diane S. Lepley, Washington, D.C., appointed by the court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton, and Debra L. Long-Doyle, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and NEWMAN and BELSON, Associate Judges.

BELSON, Associate Judge:

Appellant was convicted in a non-jury trial of the attempted taking of property without right, D.C.Code §§ 22–103, –3816 (1981 & 1986 Supp.). Appellant argues that the trial judge abused his discretion in failing to require the government to produce material tangible evidence which had been requested before trial by the defense. We agree, reverse the conviction, and remand for a new trial.

**I.**

On September 4, 1984, appellant entered a gift shop located in the Greyhound bus station. Appellant tried to push in front of another customer to get the attention of the cashier, Lois Swearengin. He was carrying a candy bar, priced at fifty-four cents. After Swearengin finished her transaction with the customer ahead of appellant, appellant approached the counter and handed Swearengin what looked like a twenty-dollar bill. The bill was folded several times, so that only the corners were visible. Swearengin took the money, but opened it up and looked at it because "it didn't feel good." The bill had the numeral "20" on each of the four corners, but the center of the bill contained the words "One Dollar" and a picture of George Washington. Apparently, four corners from one or more twenty-dollar bills had been torn off and taped to the ends of a one-dollar bill.

Swearengin called for the security guard, who was within hearing range. Appellant, not waiting for his change, attempted to leave the shop. When the security guard blocked his way, appellant asked, "What's wrong? Is something wrong with my money?" The security guard detained appellant until the police arrived to arrest him.

Appellant admitted that he went to the gift shop with the express purpose of getting change for the bill, but protested that he did not know the bill had been altered. He decided to buy a candy bar because he thought he might have trouble changing the bill without making a purchase. Appellant said that a friend had given him the bill, along with some other money which he had already used to pay for a hotel room, food, and liquor. Appellant contends that he had had no previous trouble making purchases with his friend's money, had not looked closely at the bill, and had no reason to believe that it was not a valid twenty-dollar bill.

Before trial, appellant's counsel requested discovery of the altered bill. Counsel was not given an opportunity before trial to view the bill. Apparently, it was understood that the prosecutor would bring the bill to trial, and allow counsel to inspect it before the trial began. At trial, however, when the parties were ready to proceed, the prosecutor informed the court that the officer who was supposed to have brought the bill had not done so. Instead, he had brought a receipt from the United States Treasury Department indicating that it was holding a one dollar bill that had been raised to a twenty.

Appellant moved for dismissal. He argued that the government was not ready for trial and that it could not make its case against appellant without the physical evidence. The court reserved decision and allowed the government to proceed. During the government's case, the government moved to admit the Treasury receipt. Defense counsel objected, and the court sustained the objection.[1] After the close of the evidence, the court ruled that production of the bill was not necessary for it to reach a verdict. The court found appellant guilty of attempting to take property, *viz.,* the change from the altered bill, without right.

**II.**

Under Rule 16 of the Superior Court Rules of Criminal Procedure, upon request of the defendant, the prosecutor must al-

---

1. The successful objection was based upon the best evidence rule or the hearsay rule. The receipt was not excluded as a sanction for the government's failure to produce the altered bill.

low the defense to inspect any documents or tangible objects that are material to the preparation of the defense, or that were obtained from or belong to the defendant. Super.Ct.Crim.R. 16(a)(1)(C).[2]

▆▆ Whether evidence is "material" requires a prospective evaluation, from the point of view of the defendant prior to trial, of whether the evidence has potential value for the defendant's development of a defense. (*Adrian*) *Wiggins v. United States*, 386 A.2d 1171, 1174 (D.C.1978). In addition to being material, the request for the evidence must be reasonable, that is, it may not unduly burden the government. *Id.*

The government concedes that appellant made a timely request for the bill, and that the bill was properly discoverable under Rule 16. Appellee's Brief at 7. The bill had been obtained from the defendant, and was material in that it could have been helpful to appellant in preparing his defense. Furthermore, production of the bill would not have burdened the government unduly. Both parties had expected that the bill would be produced at trial. It was only the inadvertence of a government witness that prevented appellant from examining the bill.

### III.

▆▆ If a party fails to comply with a discovery request, the court may respond by ordering discovery, granting a continuance, prohibiting introduction of the undisclosed evidence, or entering "such other orders as it deems just under the circumstances." Super.Ct.Crim.R. 16(d)(2). As is the initial determination of the evidence's discoverability, *see (Adrian) Wiggins, supra*, 386 A.2d at 1174, the imposition of sanctions against a party who has failed to comply with discovery is within the discretion of the trial court. *E.g., Sheffield v.*

*United States*, 397 A.2d 963, 968 (D.C.), cert. denied, 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1071 (1979); *Cotton v. United States*, 388 A.2d 865, 869 (D.C.1978); *(Donald) Lee v. United States*, 385 A.2d 159, 163 (D.C.1978). Although undisclosed evidence may have been properly subject to discovery, Rule 16 does not require a court to impose sanctions against the nondisclosing party. *Sheffield, supra*, 397 A.2d at 967; *Cotton, supra*, 388 A.2d at 869–70; *see Marshall v. United States*, 340 A.2d 805, 809–10 (D.C.1975). Rather, in considering the imposition of sanctions, the court must consider a number of factors, including the reason for nondisclosure, the impact of nondisclosure, and the impact of the proposed sanction on the administration of justice. *(Donald) Lee, supra*, 385 A.2d at 163.[3]

The trial court's discretion is not unlimited, however; it must be exercised "not arbitrarily or willfully but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Johnson v. United States*, 398 A.2d 354, 361 (D.C.1979) (quoting *Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931)). The court's determination must be based on a firm factual foundation and supported by substantial reasoning. *Id.* at 364–65. In reviewing a trial judge's exercise of discretion, an appellate court must defer to the judge's choice if it was within the range of permissible alternatives, taking "cognizance of the nature of the determination being made and the context within which it was rendered." *Id.* at 366.

▆▆ Because the trial court failed to state its reasons for not imposing sanctions against the government, we do not know whether it considered the factors set out by *(Donald) Lee, supra*. Assuming that it did, and reviewing the application of those

---

**2.** Appellant also argues that the government's failure to produce the bill violated his due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Because we reverse based on the trial judge's failure to impose discovery sanctions under Rule 16, we do not reach the issue of whether the bill

may have been exculpatory for *Brady* purposes. *See id.* at 87, 83 S.Ct. at 1196.

**3.** *Cf. Cotton, supra*, 388 A.2d at 869 (court must consider degree of negligence or bad faith, importance of evidence lost, and evidence adduced at trial).

standards to the facts of this case, we hold that the court abused its discretion in allowing the government to bring its case to trial without providing the defense an opportunity to view the altered dollar bill.

The first of the factors identified by *(Donald) Lee, supra,* is the reason for the nondisclosure. Here, it appears that the government's nondisclosure was merely negligent, rather than deliberate or willful. While a negligent failure to disclose does not invite severe sanctions to the extent that a purposeful withholding would, it does not serve to justify or excuse the nondisclosure. *See (Donald) Lee, supra,* 385 A.2d at 163–64.

Turning to the impact of the nondisclosure on appellant's development of a defense, it is clear that it was potentially great. The sole disputed fact in this case was whether appellant knew that the money that he tendered to the store cashier had been altered. In essence, appellant's defense depended upon establishing a mistake of fact, *i.e.,* that he mistakenly thought that he had proffered a legitimate twenty-dollar bill, and thus did not know that he had no right to the property (the change) that he attempted to take.[4] How appellant presented this defense at trial, indeed, whether he chose to rely on that defense at all, may have depended on his ability to make determinations possible only from an examination of the appearance and feel of the bill.

Applying *Lee*'s third factor, we are satisfied that the trial court's imposition of sanctions in this case would not have hindered the administration of justice. While appellant's only request was for the trial court to dismiss the case, the court could have taken the less drastic step of ordering the government to produce the bill, and granting a continuance until it did so. *See* Super.Ct.Crim.R. 16(d)(2). While it is true that this would have delayed the trial somewhat, such a burden would have been negligible in comparison to the burden on appellant of having to conduct his defense without examining the most crucial item of evidence. Nor was the bill unavailable to the government: the prosecutor proffered a receipt indicating that it was in the custody of the United States Treasury Department.

Having found error in the trial court's exercise of discretion, we must ask next whether the error is of such magnitude as to require reversal. *Johnson, supra,* 398 A.2d at 366. We should reverse if the error substantially prejudiced appellant's rights, *(Larry) Lee v. United States,* 454 A.2d 770, 776 (D.C.1982), *cert. denied,* 464 U.S. 972, 104 S.Ct. 409, 78 L.Ed.2d 349 (1983), or if it jeopardized the fairness of the proceeding or had a potentially substantial impact on the outcome of the case. *Johnson, supra,* 398 A.2d at 366.

We hold that the trial court's abuse of discretion in failing to impose sanctions against the government requires reversal in this case. As discussed above, appellant's defense depended on establishing a mistake of fact. Since a mistake of fact is a defense to a crime only if the mistake was both honest and reasonable, *Williams v. United States,* 337 A.2d 772, 774–75 (D.C.1975), an opportunity to examine the bill may have been crucial to appellant's ability to establish both the fact and the reasonableness of his mistake. Under these circumstances, the failure to allow appellant such an opportunity substantially prejudiced his rights and undermined the fairness of his trial.

*Reversed and remanded for further proceedings consistent with this opinion.*

---

**4.** A reasonable mistake of fact constitutes a defense when it negates the criminal intent required for the offense. *Morgan v. District of Columbia,* 476 A.2d 1128, 1133 (D.C.1984).