UNITED STATES, Appellant,

v.

Nathaniel L. CURTIS and Adrian
V. Price, Appellees.

Nos. 99–CO–701, 99–CO–702.

District of Columbia Court of Appeals.

Argued Jan. 20, 2000.

Decided June 1, 2000.

Sharon A. Sprague, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellant.

Anthony E. Smith, appointed by the court, for appellee Curtis.

John M. Copacino, appointed by the court, with whom Steven H. Goldblatt was on the brief, for appellee Price.

Before SCHWELB, RUIZ, and WASHINGTON, Associate Judges.

1. D.C.Code §§ 33–541(a)(1), –547.1 (1993).

2. D.C.Code § 33–541(d).

3. The materials in the discovery packet included the MPD Arrest Report (PD–163); the MPD Event Report (PD–251); an MPD Supplement Report (PD–252); the waiver of rights card (PD–47); the Report of Drug Analysis (DEA–7) corresponding to each exhibit of suspected narcotics seized by police; three property reports (PD–81) for items seized

WASHINGTON, Associate Judge:

The issue on appeal is whether the trial court erred in dismissing appellees' cases as a sanction for appellant's failure to comply with the court's order to provide certain discovery ordered pursuant to R. 16 of the Super. Ct. R. of Crim. Procedure. For the following reasons, we reverse and remand.

## I.

On August 15, 1997, appellees Nathaniel Curtis and Adrian Price were arrested after having been observed in an apparent illegal drug transaction in which Price allegedly sold heroin to Curtis. One small, pink ziplock bag containing a white substance that field tested positive for heroin was recovered from Curtis. Forty-two pink ziplock baggies and seven yellow ziplock baggies of suspected heroin were also recovered from the "stash" area from which Price had been seen retrieving the packet he sold to Curtis. One hundred ninety-eight dollars was also recovered from Price. Price was indicted for distributing, and possessing with intent to distribute, heroin within 1,000 feet of an elementary school,[1] while Curtis was indicted for possessing heroin.[2]

On September 19, 1997, the government gave Curtis and Price a discovery packet which contained materials customarily provided before trial in narcotics cases.[3] On February 20, 1998, and March 16, 1998, the government filed with the court and served on Curtis and Price a Report of Chain of Custody and Certification of Compliance ("Certificate of Compliance") pursuant to D.C.Code § 33–556,[4] attaching

from Curtis and Price; a description of the prior convictions of Curtis and Price; and viewing letters to allow Curtis and Price to inspect the seized drug evidence.

4. In the Certificate of Compliance, each Drug Enforcement Administration ("DEA") chemist who analyzed the suspected narcotics certified that when he received the suspected controlled substances in this case, he verified that the container was in a sealed condition and bore a unique DEA Lab number. Both chem-

the completed DEA–7 applicable to the evidence associated with each lab number, as well as the "Official Report of Chain of Custody and Certification of Compliance Pursuant to 33 D.C.Code Section 556." The notices, as permitted by D.C.Code § 33–556, indicated that the government intended to offer into evidence the chemists' reports relating to the chain of custody and analysis of the controlled substances seized in this case.

Curtis and Price sought additional discovery concerning the analyses done by the DEA Lab chemists in this case, as well as information concerning the operation of the DEA Lab in general.[5] Curtis and Price specifically requested certain documents relating to maintenance and repair of instruments used, as well as reports, training materials, and written protocols and procedures relating to the testing of controlled substances that were generated or in use from the time the DEA Lab received the evidence in this case to the time when the analysis was completed.

> ists also certified that they conducted analysis of the substances by reliable analytical methods while safeguarding the chain of custody of the substances being analyzed. Each chemist also certified that after completing the analysis, he placed the original sealed container and its contents into a different container, which he then sealed in such a manner that any tampering would be readily evident.

**5.** Curtis and Price sought this additional discovery on the basis of the congressional testimony of Thomas A. Constantine, DEA Administrator, that laboratory conditions at the DEA have become "unsafe" due to "a growing workload," that the laboratory is "in need of a complete reconstruction," and that "[f]ailure to improve [ ] could adversely affect the DEA's ability to provide timely, effective support of law enforcement operations." FISCAL YEAR 1996 COMMERCE, JUSTICE AND STATE APPROPRIATIONS: HEARING BEFORE THE SENATE APPROPRIATIONS COMMITTEE, SUBCOMMITTEE ON COMMERCE, JUSTICE, STATE AND THE JUDICIARY AND RELATED AGENCIES, 104 th Cong. at 509 (1996) (testimony of Thomas A. Constantine).

**6.** Shortly thereafter, Price moved to dismiss the case for an alleged *Gregory* violation, alleging that he was prevented from speaking to the DEA chemist who had analyzed the sus-

When the government refused to comply with their requests, Curtis and Price moved to compel discovery.[6] The government filed an opposition to the motion to compel but offered Curtis and Price the opportunity to view the curricula vitae of the DEA chemists who analyzed the drugs, as well as manuals regarding the maintenance, repair, and use of the machines the chemists may have used. The government further noted that it had offered Curtis and Price the opportunity to inspect the drugs. The government also agreed to provide Curtis and Price with a copy of the chemists' notes (DEA–86) and the underlying spectral analysis. The government, however, declined to produce materials relating to the maintenance of the instruments or the protocols and training materials used by the laboratory. The government also included an affidavit from Joseph P. Bono, the Director of the DEA Mid–Atlantic Laboratory for additional information responsive to the discovery requests.[7]

> pected narcotics. *See Gregory v. United States*, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966), *cert. denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969). The trial court deferred ruling on Price's motion to dismiss on *Gregory* grounds, but directed the government to file a pleading with it affirming that the DEA chemists who analyzed the samples in this case had been informed that they were not prohibited from speaking with defense counsel. On May 11, 1999, the government filed the requested pleading. Because the trial court dismissed the cases against Curtis and Price on other grounds, it never ruled on this motion.

**7.** The Bono affidavit described how DEA chemists analyze suspected contraband for the presence of controlled substances, explaining precisely what tests and equipment are used in the analyses. The affidavit also noted that tests and instruments that are properly used by qualified forensic chemists are incapable of producing a false positive. Furthermore, the affidavit described how burdensome it would be for the DEA to have to produce extensive maintenance records for every machine used in every drug case prosecuted in the District of Columbia Superior Court and how unnecessary such a records production would be in light of the fact that

On May 6, 1999, a hearing on the discovery motions was held, and the trial court granted Curtis and Price's motions to compel all of the DEA discovery requested and further ordered the government to produce the items by May 13, 1999. On May 13, 1999, the government filed a notice of filing of response to court ordered discovery in which it informed the trial court and counsel how it was responding to each item of court ordered discovery. Again, the government declined to provide any further material relating to the maintenance of the instruments or the protocols and training material used by the DEA Lab, but referred the court and counsel to the Bono Affidavit for additional information responsive to the discovery requests.

On May 20, 1999, Curtis and Price moved to dismiss the case as a sanction for the government's failure to comply with the trial court's discovery order. The trial court granted Curtis and Price's motions to dismiss for the government's failure to turn over the material which it ordered as being producible under Rule 16. The government promptly noted this appeal.

## II.

The government argues that the trial court erred in dismissing the indictment against Curtis and Price as a sanction for its failure to comply with the trial court's order to provide certain discovery. The government specifically contends that the discovery ordered was not authorized by Rule 16 because the materials sought were not shown to be material to the defense of Curtis and Price, went beyond the scope of what was required to summarize expert testimony, or were unduly burdensome to produce. This court reviews a trial court's Rule 16 discovery determination for abuse of discretion. *See (James) Wiggins v. United States,* 521 A.2d 1146, 1148 (D.C. 1987). Because Rule 16 is "substantially the same as its federal counterpart (Fed. R.Crim.P. 16)," it is to be construed consis-

tently with the federal rule and we may look to relevant federal precedents for guidance. *Waldron v. United States,* 370 A.2d 1372, 1373 (D.C.1977).

The government contends that the materials relating to the maintenance of the instruments or the protocols and training materials used by the laboratory are not discoverable under Rule 16. Curtis and Price counter that the requested material is discoverable under Rule 16(a)(1)(C), or alternatively, under Rules 16(a)(1)(D) and (a)(1)(E).

Rule 16(a)(1)(C) provides that:

[u]pon request of the defendant, the prosecutor shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense, or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

The government argues that neither the materials relating to the maintenance of the instruments used to test the contraband nor the protocols and training manuals utilized by the laboratory are material to the defense case absent some colorable claim that testing for contraband with a faulty instrument could result in a false positive for a controlled substance or that the chemist who analyzed the suspected narcotic performed his or her analysis in such a way as to call into question the validity of the findings.

 A trial court's finding on materiality is reviewed for an abuse of discretion. *United States v. Santiago,* 46 F.3d 885, 893 (9th Cir.1995). In order to establish materiality, the defendant must demonstrate a relationship between the requested evidence and the issues in the case, and

---

any machine found not to be operating properly is immediately taken out of service and

would therefore never have been used in any reported analysis.

there must exist a reasonable indication that the requested evidence will either lead to other admissible evidence, assist the defendant in the preparation of witnesses or in corroborating testimony, or be useful as impeachment or rebuttal evidence. *United States v. Lloyd,* 301 U.S.App.D.C. 186, 188–89, 992 F.2d 348, 350–51 (1993). A defendant must "make a threshold showing of materiality, which requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'" *United States v. Santiago,* 46 F.3d at 893 (quoting *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990)). The threshold showing of materiality is not a high one. *Lloyd,* 992 F.2d at 351. However, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice." *United States v. Mandel,* 914 F.2d at 1219.

▪ Thus, in order to demonstrate materiality, Curtis and Price must make some preliminary showing of a reason to doubt the chemical analysis provided by the government.[8] Although we leave it to the discretion of the trial court to determine what type of threshold showing is appropriate in each case, we would note that there should be some link to a material issue in the case. Curtis and Price rely principally on the testimony of DEA Administrator Constantine made during the Agency's budget hearings to satisfy their burden of presenting facts which call into question the validity of the chemical analysis. See note 5, *supra.* They argue that

under Rule 16(a)(1)(C), anything relevant to the issue of whether the substance recovered in this case was heroin goes to an element of the offense and is therefore material. While we agree that anything relevant to an issue in a case is material and, absent a showing of undue burdensomeness, therefore presumptively discoverable, the record in this case is unclear as to the basis upon which the trial court made its ruling that the discovery requested, but not produced, was material. For example, the record does not indicate whether the trial court considered and rejected the government's evidence that the DEA Lab equipment would not give false positive results even if the equipment were not maintained properly. *See* Bono Affidavit. Further, the record does not indicate whether the trial court found that the testimony of DEA Administrator Constantine raised a sufficient question regarding the chemical analysis performed in this case to satisfy the threshold showing of materiality required before discovery is mandated. *See United States v. Santiago, supra.*

▪ Because the trial court failed to make any specific findings before concluding that the requested materials were material to the preparation of the defense and thus producible, we are unable to determine whether the trial court abused its discretion in granting the requested discovery on the basis of Rule 16(a)(1)(C) and in dismissing the case as a sanction for failure to comply with discovery. *See Williams v. Ray,* 563 A.2d 1077, 1080 (D.C.1989).[9] The trial court also failed to

8. For example, evidence in this case that contradicts or calls into question the substance of the Bono affidavit, such as information that the failure to properly maintain the lab equipment could lead to inaccurate test results, including false positives, would make the maintenance logs material. Similarly, the submission of an affidavit from a qualified chemist that he or she noted a possible flaw in the testing procedures used by the DEA chemist (the notes of the chemists were disclosed) would satisfy the threshold showing of materiality with respect to appellees' request for copies of the training materials and protocols and procedures utilized by the DEA. It

may be that the trial court believed that the testimony of Administrator Constantine raised a question as to the validity of the test results in this case. However, the record does not contain any findings with respect to this issue.

9. In the absence of any claim of intentional falsification of test results and, in light of the Bono affidavit, the trial court must find that Curtis and Price have demonstrated a relationship between the requested information and the issue of the accuracy of the drug testing in order to order their production under Rule 16(a)(1)(C).

make specific findings regarding the government's claim that the burden of producing the requested documents is far too great to compel their disclosure. This court has recognized that the request for discovery materials must be reasonable and may not unduly burden the government. *Wiggins,* 521 A.2d at 1148.

Curtis and Price also argue that if we should find that the trial court abused its discretion by ordering discovery pursuant to Rule 16(a)(1)(C), the discovery sought is still warranted under Rule 16(a)(1)(E). Rule 16(a)(1)(E) requires summaries of the expected testimony of expert witnesses. The rule provides that:

> At the defendant's request, the government shall disclose to the defendant a written summary of expert testimony the government intends to use during its case in chief at trial. This summary must describe the expert witnesses' opinions, the bases and the reasons therefore, and the witnesses' qualifications.

Rule 16(a)(1)(E), however, does not apply to this case because the DEA chemists were not going to testify at trial as expert witnesses in the government's case in chief. The government instead announced its intention to submit the DEA–7 reports in lieu of calling the DEA chemists as witnesses pursuant to D.C.Code § 33–556.

■ Even if we were to assume that Rule 16(a)(1)(E) is applicable on the theory that the DEA–7 serves as the functional equivalent of direct testimony under the operation of D.C.Code § 33–556, the requested materials relating to the maintenance of the instruments or the protocols and training materials used by the laboratory would not be discoverable because the rule requires a written summary of expert testimony, not underlying documents. The requirements of Rule 16(a)(1)(E) were satisfied by the government's production of the DEA–7 reports of chemists' analyses, the Certificates of Compliance, and the curricula vitae of the chemists who analyzed the substances. The Advisory Committee notes, using the testimony of a DEA chemist as an example, also suggest that the summary need not be extensive where the expert is not expected "to testify on matters which touch on new or controversial techniques or opinions." Fed. R.Crim.P. 16 advisory committee's notes regarding the 1993 amendments to the rules. Furthermore, we have noted that "the identity of a controlled substance, the fact sought to be established through admission of the DEA reports, is determined by a well recognized chemical procedure." *Howard v. United States,* 473 A.2d 835, 839 (D.C.1984). Therefore, such reports contain "objective facts rather than expressions of opinion." *Id.* Additionally, this court stated that "the chemists who conduct such analyses do so routinely and generally do not have an interest in the outcome of trials. In fact, as employees and scientists, they are under a duty to make accurate reports. It is difficult to perceive any motive or opportunity for the chemists to falsify." *Id.* If Curtis and Price wished to inquire into the reliability of the testing procedure or the qualifications of the chemists, they could subpoena the chemists without cost under D.C.Code § 33–556.[10] *See Belton v. United States,* 580 A.2d 1289, 1294 (D.C.1990).

10. Curtis and Price argue that in this case, given the chemists' reluctance to speak with them about the facts of the case, subpoenaing the chemists under D.C.Code § 33–556 would have put them in the vulnerable position of not knowing what the chemists would testify to at trial. However, given the statutory presumption of drug test accuracy and the language in *Howard,* 473 A.2d at 839, that chemists have no motive to falsify reports, the risk is such that counsel can easily understand and evaluate it. Here, if there is a threshold basis to believe that the equipment used by the DEA might give a false positive result if not properly maintained or if there is a threshold basis to believe that the chemical test was performed incorrectly, then counsel would be entitled to discovery under Rule 16(a)(1)(C) to test their theory and could rationally decide whether to call the chemists at trial. Further, in appropriate cases, the trial judge could permit the defense to voir dire

■ Finally, Curtis and Price argue that the materials relating to the maintenance of the instruments or the protocols and training materials used by the laboratory would also be discoverable under Rule 16(a)(1)(D). Rule 16(a)(1)(D) concerns reports of examinations and tests and provides that:

> [u]pon request of the defendant the prosecutor shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the prosecutor, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

Because Rule 16(a)(1)(D) explicitly pertains to results or reports of scientific tests or experiments, documents concerning the maintenance of DEA Lab equipment and training manuals do not fall under this provision as they are neither reports of scientific tests or experiments. In *United States v. Iglesias,* 881 F.2d 1519, 1521–23 (9 th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1154, 107 L.Ed.2d 1057 (1990), the court held that the government "satisfied its Rule 16(a)(1)(D) obligations by turning over the lab reports," thereby upholding the trial court's denial of a defendant's Rule 16 discovery request for "log notes, protocols, and other internal documents of the chemists who worked on the analysis." The court noted that "[a]lthough it is possible that the requested log notes would allow Iglesias to provide a more effective defense, the government is under no legal duty under Rule 16(a)(1)(D) to turn over such informal internal documents." *Id.* The court further stated that "[w]hile we certainly respect defendants' rights to inspect and copy the ac-

the prosecution's chemist outside the pres-

tual results or reports of scientific tests, we are not willing to force the government to disclose every single piece of paper that is generated internally in conjunction with such tests." *Id.* In *United States v. Price,* 75 F.3d 1440, 1444 (10 th Cir.), *cert. denied,* 517 U.S. 1239, 116 S.Ct. 1889, 135 L.Ed.2d 183 (1996), a different appellate court similarly upheld the trial court's denial of a Rule 16 discovery request for "(a) the underlying bases of the government chemist's conclusion that the substances he tested were methamphetamine; (b) information relating to the reliability of the chemist's equipment; and (c) 'evidence of the chemist's credentials.' " In reaching its conclusion, the court noted that the language of Rule 16(a)(1)(D) requiring the prosecution to turn over results or reports of scientific tests did not require the government to disclose information relating to "laboratory processes." *Id.* at 1445.

■ It is also possible that the chemists' notes which the government agreed to give to Curtis and Price are not discoverable under Rule 16(a)(1)(D). As this court noted in *Waldron,* 370 A.2d at 1374, chemists' rough notes made during the testing process are not producible under Rule 16 where the prosecution furnished the results or reports of the tests performed. In reaching its conclusion, this court stated that "[n]othing more was required by Rule 16, for to read that rule beyond its language would ·add, by construction, words (e.g., 'notes', 'graphs', 'work papers') which easily could have been included in drafting the rule if such had been contemplated." *Id.*

Therefore, we find that the materials sought in this case are not discoverable under either Rule 16(a)(1)(E) or 16(a)(1)(D). Because the trial court made no specific findings regarding the materiality of the information to the preparation of the defense or as to burdensomeness to

ence of the jury.

the government, *see* Rule 16(a)(1)(C), we reverse and remand the case for further proceedings not inconsistent with this opinion.

*So ordered.*

SCHWELB, Associate Judge, concurring.

I recognize that in every drug prosecution, the government must prove beyond a reasonable doubt that the contraband in question was indeed a controlled substance. Nevertheless, I am satisfied that, in the absence of some threshold showing by the defense in a particular case that there is reason to doubt the government's chemical analysis, the discovery provided by the prosecution to these appellees would be quite sufficient. I do not construe the opinion of the court, which I am pleased to join, as being to the contrary.