**Gene E. WATSON, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

No. 09–CM–447.

District of Columbia Court of Appeals.

Argued June 3, 2010.

Decided May 10, 2012.

Rufus W. McKinney Jr. for appellant.

Michael Friedman, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Elizabeth Trosmam, and John Roth, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and RUIZ, Associate Judge Retired.*

---

RUIZ, Associate Judge, Retired:

Gene E. Watson appeals his conviction for attempted possession of marijuana, in violation of D.C.Code § 48–904.01(d) (2001). Appellant claims that the trial court erred in: (1) denying his motion to suppress drug evidence found in a search incident to an arrest he claims lacked probable cause, and where the prosecutor did not comply with Rule 16 discovery requirements prior to the suppression motion; and (2) admitting two statements appellant made, in violation of his Fifth Amendment rights. We conclude that none of appellant's claims requires reversal and we therefore affirm his conviction.

## I. Statement of Facts

On June 17, 2008, Metropolitan Police Department (MPD) Officer Chris Reisinger was on duty in a marked police cruiser on the Whitney Young Memorial Bridge. Officer Reisinger was operating a "Lidar III" device—a laser radar detection gun—to detect speeding cars. At approximately 6:00 p.m., Officer Reisinger saw appellant's car traveling across the bridge "at a high rate of speed" and going "a lot faster than other vehicles." The speed limit on the bridge, which was clearly indicated by two posted signs, was forty miles per hour. The officer testified that when he pointed his Lidar III device at appellant's car, the gun sounded an audible target acquisition tone, locked on the vehicle, and indicated that the car was traveling at eighty-eight miles per hour—forty-eight miles over the posted speed limit. Officer Reisinger testified that he knew that driving thirty miles over the speed limit in the District of Columbia is an arrestable offense, so he signaled to appellant to pull over to the side of the road. Officer Reisinger ap-

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired on September 1, 2011.

proached the driver's side of the car and asked appellant (the sole occupant of the vehicle) for his driver's license and registration information. Appellant produced a driver's license and a D.C. fireman's employee identification card. The officer then asked appellant to step out of the car, at which time he handcuffed appellant and informed him that he was under arrest for driving more than thirty miles over the speed limit.

Officer Reisinger then began to search appellant incident to the arrest, during which the officer pulled up appellant's pant leg and noticed a bulge in appellant's sock. The officer testified that "for safety reasons" he asked, "what's that?" Appellant responded, "Oh, it's just some weed." Officer Reisinger recovered what he suspected to be crack cocaine and marijuana from appellant's sock (both field-tested positive as drugs) as well as $1,387 from appellant's pocket. Because of appellant's status as a D.C. Fire Department employee, Officer Reisinger notified the fire department of appellant's arrest. While waiting for the fire department officers to arrive and retrieve appellant's employee identification card, Officer Reisinger asked appellant "standard biographical questions" for booking purposes, such as his name and date of birth. According to Officer Reisinger, appellant had not been prompted by a question when he volunteered that he had "just got it at Riggs Road, it's for my girl." Officer Reisinger did not respond to appellant's statement. After the fire department officers arrived and appellant's employee identification card was surrendered to them, appellant was taken to the police department.

Appellant was charged with one count of unlawful possession of cocaine, in violation of D.C.Code § 48–904.01(d), and one count of unlawful possession with intent to distribute marijuana, in violation of D.C.Code § 48–904.01(a)(1). However, because the forensic chemist who prepared the Drug Enforcement Administration's (DEA) laboratory report was unavailable to testify at trial, the government amended the charges to one count of attempted possession of cocaine and one count of attempted possession of marijuana. Defense counsel filed a motion to suppress the statements under the Fourth and Fifth Amendments alleging that the incriminating statements were obtained during the course of an unlawful arrest and in violation of appellant's *Miranda*[1] rights.

After hearing testimony from Officer Reisinger, the court denied appellant's motion to suppress appellant's two statements because appellant was "not specifically interrogated" and "it was legitimate for the officer, as he testified, [to be] concerned about his safety [and] to make sure that the item that he was going to attempt to retrieve from the sock area from the bulge in the sock did not contain something that could injure him." The judge found appellant guilty of attempted possession of marijuana, relying on the "unrebutted" and "very credible" testimony of Officer Reisinger, the fact that appellant had concealed the item which "is consistent with the items being illegal," and the "very large amount of cash" found on appellant. The trial court also credited that appellant made the statements that the substance in the sock was marijuana and that he had purchased it for his girlfriend, which the court deemed sufficient evidence to establish that appellant was guilty of attempted possession of marijuana.[2] Due to the lack

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Appellant was sentenced to 180 days' imprisonment, with execution of sentence suspended as to all but sixty days, one year of

of evidence regarding the substance suspected to be cocaine, the court acquitted appellant of that count. Appellant filed this timely notice of appeal.

## II. Suppression of Physical Evidence

Appellant contends that the trial court erred in denying his motion to suppress evidence because the arrest, which led to Officer Reisinger searching him and finding the marijuana, was made without probable cause. Appellant maintains that the officer lacked probable cause because he unreasonably relied upon incompetent evidence to formulate his belief that the Lidar III device accurately recorded that appellant was driving thirty miles above the legal speed limit. Relatedly, appellant claims that the government violated D.C. Superior Court Rule of Criminal Procedure 16 in not providing to defense counsel certain documents "material to the preparation of the defendant's defense," which "relat[ed] to Reisinger's testimony on his preparation for use of the Lidar III and . . . regarding proper training, use and employment of the [L]idar."

### A. *Probable Cause to Arrest*

■■■ On appeal from a denial of a motion to suppress, our scope of review is limited. *See Womack v. United States,* 673 A.2d 603, 607 (D.C.1996). We review the trial court's legal conclusions *de novo* and defer to the trial court's findings of fact unless they are clearly erroneous. *See Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Whether the police had probable cause on a given set of facts is a question of law we review *de novo. See id.* We will not disturb the trial judge's factual findings unless they are clearly erroneous or not supported by the record, and we

will draw all reasonable inferences in favor of sustaining the trial court's ruling. *See Blackmon v. United States,* 835 A.2d 1070, 1073 (D.C.2003).

■■■ A police officer conducting a traffic stop must have "a reasonable, articulable suspicion that he was witnessing a traffic violation" before he may stop a vehicle and its occupants. *Duckett v. United States,* 886 A.2d 548, 551 (D.C. 2005). Once the stop has been made, the officer may make an arrest only if there is probable cause. "The classical formulation is that '[p]robable cause exists where 'the facts and circumstances within [the officers'] knowledge of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed.'" *Perkins v. United States,* 936 A.2d 303, 306 (D.C.2007) (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Probable cause is measured by "the totality of the circumstances" and while it "must be supported by more than mere suspicion" it "need not be based on evidence sufficient to sustain a conviction." *Blackmon,* 835 A.2d at 1075.

■■■ We begin by noting that the government was not required to prove that appellant was in fact driving at a speed of eighty-eight miles per hour, or even that the Lidar III device was accurate in its calculation of the speed of his vehicle, as appellant was not prosecuted for speeding but for attempted possession of marijuana. Speeding at more than thirty miles over the posted speed limit is an arrestable offense. *See* 18 DCMR § 2200.12. Thus, at the suppression hearing the government was required to prove that Officer Reising-

supervised probation conditioned on continued drug testing and treatment, and a $50

fine to be paid to the Victims of Violent Crime Compensation Fund.

er had probable cause, or "reasonably trustworthy information ... to warrant a man of reasonable caution in the belief," *Perkins*, 936 A.2d at 306, that appellant was driving thirty miles over the posted speed limit of forty miles per hour.[3]

The trial court credited the testimony of Officer Reisinger that when he pulled appellant over, he had observed appellant driving across the bridge at a rate significantly faster than the other cars. In addition to his visual observation, the officer aimed the Lidar III device at appellant's car and saw a reading of eighty-eight miles per hour, forty-eight miles over the posted speed limit. Officer Reisinger testified that he had operated the Lidar III device for at least a couple of years, had been trained and certified by MPD in its use, had conducted the Lidar III device's self-test earlier that day, which indicated that it was functioning properly, and knew that the device itself had recently been certified as accurately calibrated by an outside entity. In light of the officer's testimony credited by the trial court, we agree with the trial court's conclusion that it was reasonable for Officer Reisinger to believe that he had probable cause to arrest appellant for speeding. *See Perkins*, 936 A.2d at 306.

### B. *Rule 16 Discovery Violation*

■■■■■ In a related claim, appellant contends that the government failed to produce a number of documents relating to Officer Reisinger's training for and use of the Lidar III device, and the accuracy of the Lidar III device the officer used when he stopped appellant, that counsel had requested pretrial pursuant to Superior Court Rule of Criminal Procedure Rule 16. These documents, he claims, were necessary for counsel's preparation for the suppression motion. We review the trial court's discovery rulings for abuse of discretion, *United States v. Curtis*, 755 A.2d 1011, 1014 (D.C.2000), but we consider the proper construction of the rule *de novo. See Ferguson v. United States*, 866 A.2d 54, 59 (D.C.2005). Rule 16, which governs pretrial discovery, confers to an accused the right to discover specific information within the government's control, such as "books, papers, documents, photographs ... which are material to the preparation of the defendant's defense, or are intended for use by the government as evidence in chief at the trial or were obtained from or belong to the defendant." Super. Ct.Crim. R. 16(a)(1)(C); *see also Davis v. United States*, 641 A.2d 484, 489 (D.C.1994). Under Rule 16, appellant bears the burden of establishing a prima facie case of materiality with respect to the requested documents. *See Tyer v. United States*, 912 A.2d 1150, 1164 (D.C.2006). In order to show that the requested documents are material, a defendant has to "demonstrate a relationship between the requested evidence and the issues in the case." *Curtis*, 755 A.2d at 1014. However, "[t]he 'threshold showing of materiality, ... is not a high one'; the defendant need only establish a 'reasonable indication' that 'the requested evidence will either lead to other admissible evidence, assist the defendant in the preparation of witnesses or in cor-

---

**3.** At the hearing on the motion to suppress, appellant relied on the Superior Court's opinion in *District of Columbia v. Chatilovicz*, No. 2006–CTF–2633 (Apr. 30, 2008), which set forth testing procedures (to prove reliability and accuracy of the device) to be followed by the government in order to submit Lidar device test results in court as evidence. *Id.* at

**39.** As the trial judge explained, "Judge A[ ]brecht's opinion in *Chatilovicz* clearly governs the use of this evidence for the specific purpose of providing a sufficient evidentiary basis to convict the defendant of speeding. Not, however, for justifying a traffic stop based on the suspicion of speeding."

roborating testimony, or be useful as impeachment or rebuttal evidence.'" *Tyer*, 912 A.2d at 1164 (quoting *Curtis*, 755 A.2d at 1014). Moreover, "[w]hether evidence is 'material' requires a prospective evaluation, from the point of view of the defendant prior to trial, of whether the evidence has potential value for the defendant's development of a defense." *Wiggins v. United States*, 521 A.2d 1146, 1148 (D.C.1987). A request for discovery materials should be reasonable and not impose an undue burden on the government. *See id.*

In order to demonstrate materiality, appellant had to make a preliminary showing that the requested evidence was "material to the preparation of [his] defense, or [was] intended for use by the government as evidence in chief at the trial." Super. Ct.Crim. R. 16(a)(1)(C). At the suppression hearing, defense counsel filed a motion in limine to exclude any evidence relating to the Lidar III device. Appellant's Rule 16 discovery request included: (1) a certificate of calibration of the Lidar III device issued by the manufacturer; (2) documents indicating that Officer Reisinger had received at least four hours of training and was certified to operate the Lidar III device; (3) the officer's written notes in connection with the incident; (4) any evidence tending to indicate that Officer Reisinger performed the daily tests recommended by the manufacturer before and after using the Lidar III device on the day he stopped appellant; and (5) any evidence tending to prove that Officer Reisinger made a visual estimate of the target vehicle's speed. Appellant argued at the suppression hearing, as he also does on appeal, that these documents were material as they were "essential and

pivotal to the officer's formulation of probable cause." Appellant argued that if the government intended to rely on the Lidar III device's reading to establish probable cause, appellant was entitled to the calibration report in preparation for the hearing. The trial judge asked the government whether it planned to establish probable cause by relying solely on the testimony of the officer's visual assessment, or whether Officer Reisinger was going to testify to the speed that the Lidar III device registered upon tracking appellant's car. The government responded that it intended to "use[ ] the [L]idar gun to confirm [the officer's] visual inspection of the [vehicle]," but argued that the actual calibration of the Lidar III device was "irrelevant" to the determination of whether the officer had a good faith basis for pulling over and subsequently arresting appellant. The government did not produce the documents requested.

In an effort to move the trial forward, the judge decided to proceed with the testimony of Officer Reisinger, and explained that she would determine whether proof of calibration was required, based on the officer's testimony. During the cross-examination of Officer Reisinger, defense counsel elicited much of the information requested in his discovery request, Officer Reisinger: (1) testified he knew that the Lidar III device had been calibrated by a private company six days prior to appellant's arrest, and relied on that for its accuracy;[4] (2) described his training on the use of the Lidar III device; (3) said he did not take notes on the day of the arrest; and (4) explained that on the day of the arrest, he had conducted the internal

---

4. Counsel asked the officer, "Are you telling the court that you were basing the accuracy of the gun that day on the fact that it had been calibrated recently?" Officer Reisinger responded, "Yeah, once the Lidar guns come back, they're calibrated, obviously, they're tested."

self-test recommended by the manufacturer of the Lidar III device.

■ In light of Officer Reisinger's reliance on the independent calibration of the Lidar III device, the trial court ordered the government, over the prosecutor's objection, to produce the requested calibration report.[5] The prosecutor then presented a certificate of accuracy of the Lidar III device's calibration, and a calibration report with a Pro Laser III "safety touch sheet" from the company that had calibrated the Lidar III device; both documents were dated June 18, 2008, six days before appellant was stopped and arrested for speeding. Because the trial court had allowed Officer Reisinger to testify before the Lidar III device's calibration documents had been produced to the defense, the trial court explained that if there were questions regarding the documents, appellant's trial counsel would be permitted to re-cross-examine Officer Reisinger. Counsel declined to do so and did not ask for a continuance to consider and prepare for examination based on the documents newly produced by the government. In short, counsel received the requested calibration documents and had an opportunity to consider and use them at the suppression hearing.

■ Appellant nonetheless maintains that other requested documents, regarding Officer Reisinger's training and use of the Lidar III device, were never produced by the government. Appellant does not, however, "demonstrate a relationship between the requested evidence and the issues"

relevant to suppression. *Curtis,* 755 A.2d at 1014. As the trial court noted in denying the motion to suppress, whether Officer Reisinger had probable cause to arrest appellant depended on what the officer reasonably believed and relied on, not on whether the officer's operation of the Lidar III device, or the radar gun itself, were sufficiently reliable to serve as substantive evidence of the crime of speeding. Officer Reisinger testified at the suppression hearing that he had been trained on the use of the Lidar III device, had used the internal self-test mechanism of the Lidar III device, and knew that the Lidar III device had been calibrated six days prior to the arrest by an independent entity. Thus, the only other evidence material to appellant's motion was the certificate of calibration, which was provided to defense counsel. The other documents appellant requested were not material to the reasonableness of Officer Reisinger's belief that he had probable cause to arrest appellant for speeding at more than thirty miles over the posted limit. Accordingly, we cannot conclude that the trial court abused discretion in denying appellant's motion to suppress the drug evidence.

### III. Suppression of Statements

Appellant claims that two statements he made at the time of arrest were procured in violation of his *Miranda* rights, and thus, should have been suppressed. The government disagrees, claiming, as the trial court found, that the first statement ("[I]t's just some weed.") was admissible

5. The prosecutor's objection appears to have been based on a reading of Rule 16's discovery obligation as applying only to evidence of charged offenses, not issues at a motion to suppress. The trial judge overruled the prosecutor's unduly narrow interpretation of Rule 16. Clearly, documents, objects, and reports relevant to the suppression of evidence or statements that tend to prove a charged offense have a "demonstra[ble] ... relationship ... [to] the issues in the case," *Curtis,* 755 A.2d at 1014, and are "material to the preparation of the defense," Super. Ct.Crim. R. 16(a)(1)(C) & (D), "... even if the documents, objects, and reports relevant to suppression do not themselves go directly to proof of a charged offense."

under the "public safety" exception to *Miranda*, while the second statement ("[I] just got it at Riggs Road, it's for my girl.") was spontaneous and not made in response to custodial interrogation. The trial court relied on appellant's statements to find that the substance in appellant's sock was marijuana, and that he was therefore guilty of attempted possession of marijuana.

The government is constitutionally precluded by the Fifth Amendment's Self–Incrimination Clause from using in its case-in-chief a defendant's statement, whether exculpatory or inculpatory, stemming from custodial interrogation unless the defendant has been advised of his right to remain silent and to have an attorney present. *See Miranda,* 384 U.S. at 444, 479, 86 S.Ct. 1602. Here, it is undisputed that appellant, who had been arrested, was in custody for Fifth Amendment purposes. *See Berkemer v. McCarty,* 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). However, "[i]t is clear ... that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Interrogation, for Fifth Amendment purposes under *Miranda,* is defined as "not only express questioning, but also ... any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. 1682 (footnote omitted).

"Whether, on the duly established facts, [appellant] was subjected to custodial interrogation without the benefit of *Miranda* warnings ... is a question of law that the court reviews *de novo.*" *Reid v. United States,* 581 A.2d 359, 363 (D.C. 1990). We "view the record in the light most favorable to the party that prevailed in the trial court ... and we must sustain any reasonable inference that the trial judge has drawn from the evidence." *Morris v. United States,* 728 A.2d 1210, 1215 (D.C.1999). "[O]ur role ... [in reviewing a trial court's denial of a motion to suppress] 'is to ensure that the trial court had a substantial basis for concluding' that no constitutional violation occurred." *Joseph v. United States,* 926 A.2d 1156, 1160 (D.C.2007) (quoting *United States v. Johnson,* 540 A.2d 1090, 1091 n. 2 (D.C.1988)). We conclude that the trial court did not err in determining that neither of appellants' statements should be suppressed.

### A. *Public Safety Exception*

Appellant challenges the trial court's determination that his statement in response to the officer's question ("what's that?") during the search was not subject to suppression, given that Officer Reisinger's question was "a mechanism designed to elicit an incriminating statement from [appellant]," and the officer's "concern for his safety was misplaced and inappropriately handled." Appellant claims that there were many other options available to the officer to ensure his safety from, e.g., being stuck by a needle, other than asking him generally about what was in the sock and that "the tactic used by Reisinger was laden with trick and artifice, specifically designed to elicit a statement by appellant." The government argues that safety concerns justified Officer Reisinger's inquiry about a suspicious-looking lump in appellant sock.

The question presented for our resolution is whether the narrow "public safety" exception to *Miranda*'s rule of exclusion established in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984),[6] applies here. In *Quarles*, the Supreme Court held that "there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence." *Id.* at 655, 104 S.Ct. 2626. In "a situation in which police officers ask questions reasonably prompted by a concern for the public safety," the "doctrinal underpinnings of *Miranda*" do not apply. *Id.* at 656, 104 S.Ct. 2626. This is because the "need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 657, 104 S.Ct. 2626.

The *Quarles* exception applies to questions prompted by concern for public safety, *see Trice v. United States*, 662 A.2d 891, 895 (D.C.1995), as well as for the safety of an individual police officer. *See United States v. Jones*, 567 F.3d 712, 714–15 (D.C.Cir.2009) ("*Miranda* should not apply to situations 'in which police officers ask questions reasonably prompted by a concern for the public safety,' or for the safety of the arresting officers.'" (quoting *Quarles*, 467 U.S. at 656, 658–59, 104 S.Ct. 2626)). We review *de novo* the trial court's legal conclusion that appellant's response to Officer Reisinger's question is

admissible under the public safety exception. *See Byrd v. United States*, 618 A.2d 596, 599 (D.C.1992). The public safety exception is a "'function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of the circumstances in a given case.'" *United States v. Reyes*, 353 F.3d 148, 152 (2d Cir.2003) (quoting *United States v. Banks*, 540 U.S. 31, 36, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003)). The Supreme Court has expressed confidence that "police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Quarles*, 467 U.S. at 657, 104 S.Ct. 2626.

The public safety exception applies only where there is "an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon." *Quarles*, 467 U.S. at 659 n. 8, 104 S.Ct. 2626. "What is objectively reasonable, of course, depends upon the circumstances of the arrest." *United States v. DeSumma*, 44 F.Supp.2d 700, 704 (E.D.Pa.1999). In determining whether a question is justified by concern for safety, courts have considered factors including "the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by the officer when he undertakes the

---

6. In *Quarles*, two police officers were approached by a woman who said that she had been raped, and that the rapist entered a nearby supermarket and was carrying gun. 467 U.S. at 651–52, 104 S.Ct. 2626. One of the officers entered the supermarket and saw a man fitting the description of the rapist. When the suspect saw the officer, he fled, but was apprehended by the officer, frisked and found to be carrying an empty gun holster.

After handcuffing the suspect, but before advising him of his *Miranda* rights, the officer asked him where the gun was to which the suspect replied, "the gun is over there." *Id.* at 652, 104 S.Ct. 2626. The Supreme Court held that the statement and the gun were admissible under a new "public safety" exception to *Miranda*. *See id.* at 655–56, 104 S.Ct. 2626.

arrest." *United States v. Williams,* 483 F.3d 425, 428 (6th Cir.2007).

In this case, the trial court found that, based on the totality of the circumstances, Officer Reisinger acted reasonably, out of a concern for his own safety, in inquiring of appellant regarding the bulge in his sock. The court credited Officer Reisinger's testimony that "[i]n my 12 years, I've seen a lot of things—razor blades, knives. So you always want to check to make sure before you grab anything that you know what it is that you're grabbing." *Cf. Johnson v. United States,* 350 A.2d 738, 739 (D.C.1976) (noting, in Fourth Amendment context, that officer with four-and-a-half years of experience and fear that appellant may have been armed acted reasonably in searching bag given that he "made arrests for finding weapons in bags before").

 We have not had occasion to address a situation involving a concern for an officer's safety over possible injury from needles and sharp objects; our cases to date have concerned only concealed or abandoned guns. *See, e.g., Green v. United States,* 974 A.2d 248, 254, 258–59 (D.C. 2009) (holding officers' question about location of gun was traceable to an objectively reasonable concern for safety where officers were in high-drug area to investigate tip that a man of a certain description had a gun and officers saw man fitting description make a "furtive gesture" to his waist); *Dyson v. United States,* 815 A.2d 363, 365, 369 (D.C.2003) (holding police officer had objectively reasonable basis for safety concern where defendant ran from police into alley "tugging his waistband," and officer thought he "saw the butt of a handle of a gun," and suspected gun hidden in alley into which defendant fled would create legitimate threat to public safety); *see also Trice,* 662 A.2d at 897 (noting in case where *Miranda* warnings were given that public safety exception would have applied

to locate missing weapon suspected to be in home with small children). Other courts have held that asking an arrestee, during the conduct of a search, whether he had any needles on him comes within the public-safety exception because even though the risk presented by a needle (or other sharp object) differs from that of a gun, "the danger of transmission of disease or contact with harmful substances is real and serious enough." *United States v. Carrillo,* 16 F.3d 1046, 1049–50 (9th Cir. 1994). In *United States v. Lackey,* 334 F.3d 1224, 1227–28 (10th Cir.2003), the court held that, in the context of a search incident to arrest, "the purpose of the question, 'Do you have any guns or sharp objects on you?' is not to acquire incriminating evidence; it is solely to protect the officers, as well as the arrestee, from physical injury." Similarly, in *United States v. Webster,* 162 F.3d 308, 332 (5th Cir.1998), the court held that "the police acted constitutionally when they asked [the suspect] whether he had any needles in his pockets that could injure them during their pat down; such questioning, needed to protect the officers, does not constitute interrogation under *Miranda.*" We think that in the circumstances of this case, where the officer, in the process of searching appellant, came upon an unknown "bulge" in appellant's sock, it was objectively reasonable that the officer would be concerned about what was in the bulge before he placed his hand on or inside the sock. The officer, therefore had objective justification for asking a question. *See Quarles,* 467 U.S. at 656, 104 S.Ct. 2626 ("[T]he availability of the exception does not depend upon the motivation of the individual officers involved.").

 But what question could the officer ask that would reasonably protect him from injury, yet be consistent with *Miranda*'s mandate? The safety excep-

tion, we emphasize, is "narrow," *Quarles,* 467 U.S. at 658, 104 S.Ct. 2626, and must be justified by the specific circumstances. It "must not 'be distorted into a *per se* rule as to questioning people in custody on narcotics charges,'" *United States v. Estrada,* 430 F.3d 606, 613–14 (2d Cir.2005) (quoting *Reyes,* 353 F.3d at 155), or used as a ruse to elicit unwarned statements otherwise prohibited by *Miranda.* In some of the reported cases, the officer's question was specific as to the nature of the potentially injurious objects the officer was seeking to identify. *See, e.g., Lackey,* 334 F.3d at 1227–28 ("Do you have any guns or sharp objects on you?"). In this case, Officer Reisinger asked a general question, "what's that?" That question, though framed in general terms, must be viewed—and can be justified only by—the specific circumstances. For example, the D.C. Circuit Court held in *Jones* that the question "do you have anything on you?" was reasonably prompted by a concern for public safety, in light of the totality of the circumstances. In *Jones,* the circumstances were that the officers had reason to believe that the suspect of an armed murder would likely be carrying a firearm, and, when approached by an officer, the suspect fled through a crowd to a dimly lit stairwell, the officer heard shots fired from his left, children were present in the area, and the officer asked the question within thirty seconds of apprehending the suspect and did not inquire further after the suspect acknowledged having a "burner" in his waistband. 567 F.3d at 716–17. In *United States v. Williams,* 181 F.3d 945, 954 n. 13 (8th Cir.1999), the court held that although the officer did not specifically refer to weapons or safety concerns in the question posed to the suspect, "[I]s there anything we need to be aware of?," and despite the fact that the question was broad enough to elicit other information, the question was justified under the specific circumstances encountered by police. The *Williams* court considered that a confidential informant had provided information that the suspect was trafficking narcotics from his apartment, the officers "belie[ved] that drug dealers were known to possess firearms," the "officers could not have known if any armed individuals were present in the apartment or preparing to enter the apartment," the "officers could not have known whether other hazardous weapons were present in the apartment that could cause them harm if they happened upon them unexpectedly or mishandled them in some way," and the suspect had in the past been charged with unauthorized use of a weapon. Courts have cautioned against conditioning the applicability of the safety exception on an officer's ability to ask questions in a specific form. *See United States v. Newsome,* 475 F.3d 1221, 1223 (11th Cir.2007) (holding that the question, "[I]s there anything or anyone in the room that I should know about?," was justified under public safety exception when officers entered motel room under the impression that there were at least two people in the room and only encountered one person at the door, and officers knew they were dealing with a possibly armed, violent felon). Where the circumstances present an arresting officer with objectively reasonable grounds for safety concerns, and a question is asked to allay that concern and does not go beyond that concern, the question itself " 'need not be posed as narrowly as possible because precision crafting cannot be expected in the circumstances of a tense and dangerous arrest.'" *Jones,* 567 F.3d at 716–17 (quoting *Estrada,* 430 F.3d at 612).

Viewed in the context of appellant's arrest and search, Officer Reisinger's question, asked upon seeing a bulge in appellant's sock that could conceal a needle or other sharp or harmful object that would

290

have posed a risk of injury to the officer as he patted down and searched the sock, reflected his "stated aim to ascertain and neutralize any threat" from what he had seen. *Crook v. United States*, 771 A.2d 355, 359 (D.C.2001). This was not a "fishing expedition," or a ruse to elicit incriminating evidence, such as has been found in cases where the "danger inherent in a confrontation has passed," and the officers have continued to ask questions of a non-*Mirandized*, arrested defendant. *See United States v. Jackson*, 544 F.3d 351, 353–60 (1st Cir.2008) (holding that questioning about location of gun was improper where police went to apartment of person suspected of having acquired a stolen gun, police surrounded him, took him outside, and obtained consent from other occupant to search apartment); *United States v. DeSumma*, 272 F.3d 176, 178, 181 (3d Cir.2001) (public safety exception did not justify question about weapons where suspect had been handcuffed and patted-down and officers had no basis to believe he was armed or violent); *United States v. Brathwaite*, 458 F.3d 376, 377–78, 383 (5th Cir.2006) (holding public safety exception did not justify questions about guns during execution of search warrant of home for evidence of check and identity card counterfeiting and occupants were handcuffed). Officer Reisinger asked the question, "what's that?," immediately upon seeing the bulge in the sock as he was searching appellant and about to make physical contact with the bulge. He did not follow up with more questions, which suggests that he recognized the distinction between safety-related questions and investigatory

questions, and limited himself to the former. *See Quarles*, 467 U.S. at 659, 104 S.Ct. 2626 (noting that the officer "asked only the question necessary to locate the missing gun before advising [the suspect] of his rights"); *Reyes*, 353 F.3d at 154–55 (noting the significance of the "arresting officer's disinclination to exploit the situation" by asking further questions); *Carrillo*, 16 F.3d at 1050 (emphasizing "the officer's deliberate refusal" to ask further question). Under the circumstances, we conclude, Officer Reisinger's "inquir[y] f[e]ll squarely within the public-safety exception to *Miranda v. Arizona*, recognized by the Supreme Court in *New York v. Quarles*." *United States v. Brown*, 449 F.3d 154, 159 (D.C.Cir.2006).

Thus, we hold that the trial judge did not err in denying the motion to suppress the first of appellant's statements ("[I]t's just some weed.").

### B. *Spontaneous Statement*

■ Appellant claims that his second statement about the marijuana, "[I] just got it at Riggs Road, it's for my girl," was inadmissible because it was made in response to improper questioning by the officers given that appellant had not been read his *Miranda* rights.[7]

■ If a suspect is in custody but volunteers a statement—in the absence of interrogation or its equivalent—there is no *Miranda* violation even if the suspect was not advised of his rights. *See Innis*, 446 U.S. at 299–300, 100 S.Ct. 1682; *Miranda*, 384 U.S. at 478, 86 S.Ct. 1602 (noting that "[a]ny statement given freely and volun-

7. Appellant's brief argued that the statement was inadmissible because the officers had called appellant's employer (the D.C. Fire Department) to come to the scene of arrest in order to "promote and elicit discourse" between appellant and his fellow fire department colleagues, which Officer Reisinger then overheard, and the government used to incriminate appellant. Appellant's counsel conceded at oral argument, however, that the record reflects that appellant made the statement prior to the arrival of the Fire Department officials.

tarily without any compelling influence is, of course, admissible in evidence" and "not barred by the Fifth Amendment"). In addition, answers given in response to routine booking questions are admissible notwithstanding the fact that *Miranda* warnings have not been given. *See Jones v. United States,* 779 A.2d 277, 283–84 (D.C. 2001) (en banc).

In this case, the trial court credited Officer Reisinger's testimony that appellant's statement about buying the marijuana for his girlfriend was volunteered during the course of the officer's questioning about "strictly biographical information." Appellant was not interrogated about why he had the drugs, and it does not seem plausible that the officer would have had any reason to think that asking standard booking questions after the arrest would likely elicit an incriminating response from appellant. *See (Courtney) Johnson v. United States,* 40 A.3d 1, 13 (D.C.2012) ("We do not think it plausible that the police should have known that asking routine questions in the rear of a police vehicle onsite immediately after appellant was arrested would likely elicit an incriminating response from him."). Given the unrebutted testimony of Officer Reisinger, the trial court did not err in finding appellant's statement spontaneous and not the product of custodial interrogation.

For the foregoing reasons, we affirm appellant's conviction.

*So ordered.*